IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STONE & YOUNGBERG, LLC,<br><br>Petitioner,<br><br>v.<br><br>KAY FAMILY REVOCABLE TRUST UAD 02-07-90 FBO LENORE BLEADON UNDER TRUST A,<br><br>Respondent. | No. C-11-0198 MMC<br><br>**ORDER DENYING PETITIONER'S MOTION TO VACATE ARBITRATION AWARD; CONFIRMING RESPONDENT'S MOTION TO CONFIRM ARBITRATION AWARD; VACATING JUNE 24, 2011 HEARING** |

Before the Court is the Motion to Vacate Arbitration Award, filed April 15, 2011 by petitioner Stone & Youngberg, LLC ("S & Y"). Also before the Court is the Motion of Confirm Arbitration Award, filed May 19, 2011 by respondent Kay Family Revocable Trust UAD 02-07-90 FBO Lenore Bleadon Under Trust A ("the Trust"). Both motions have been fully briefed. Having read and considered the papers filed in support of and in opposition to the motions,[1] the Court deems the matters suitable for decision on the parties' respective written submissions, VACATES the hearing scheduled for June 24, 2011, and

---

[1] S & Y failed to provide the Court with a chambers copy of its electronically-filed reply. Nonetheless, the Court has considered said filing. For future reference, S & Y is reminded that, pursuant to Northern District General Order 45 and this Court's Standing Orders, parties are required to provide for use in chambers one paper copy of each document that is filed electronically, such copy to be delivered no later than noon on the day after the document is filed electronically.

rules as follows.

On December 14, 2010, an arbitration panel issued an award ("Award") in the amount of $750,000 in favor of the Trust and against S & Y, a securities brokerage firm, on the Trust's claims arising from losses sustained as a result of the Trust's investment in a fund named FutureSelect Prime Advisor II ("Fund"). (See Compl. Exs. A, D.) By the instant Complaint and Petition, S & Y alleges the Award should be vacated, for the asserted reason that the panel, in ruling in favor of the Trust, "manifestly disregarded federal law." (See Compl. ¶ 7.)

Under the Federal Arbitration Act, a district court may vacate an arbitration award "where the arbitrators exceeded their powers." See 9 U.S.C. § 10(a)(4). "Arbitrators exceed their powers when," inter alia, "they express a manifest disregard of law." See Bosack v. Soward, 586 F.3d 1096, 1104 (9th Cir. 2009) (internal quotation and citation omitted), cert. denied, 130 S. Ct. 1522 (2010).

"Manifest disregard" means "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law." See Collins v. D.R. Horton, Inc., 505 F.3d 874, 879 (9th Cir. 2007). Rather, to establish a manifest disregard of law, "the moving party must show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same." See id. (internal quotation, alterations, and citation omitted). "Moreover, to rise to the level of manifest disregard[,] the governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable." Id. at 879-80 (internal quotation, alterations and citation omitted).

Here, each of the Trust's claims was based on the theory that S & Y did not perform requisite due diligence before advising the Trust to invest in the Fund, which, according to the Trust, invested substantially all of its capital with Bernard Madoff, who subsequently was convicted of operating a Ponzi scheme. (See Compl. Ex. D.) One of S & Y's defenses, and the only defense on which it relies here, was that the Trust, irrespective of whether it established S & Y's lack of due diligence, could not demonstrate causation.

(See, e.g., Suter Decl. Ex. F at 42 (statement in S &Y's closing argument that a "causal chain between [S & Y's] alleged lack of due diligence in the Madoff fraud is just nonexistent"); id. Ex. F at 60 (statement in S & Y's closing argument that S & Y was "not responsible for [the Trust's] harm because of the later misconduct of Bernard Madoff"). The Trust, on the other hand, continued to maintain, both in its arbitration brief and in closing argument, that S & Y should be held liable because the Trust's losses were caused by S & Y's failure to perform adequate due diligence prior to recommending an investment in the Fund. (See, e.g., Finan Decl. Ex. C at 4:3-8; Suter Decl. Ex. F at 124:18 - 125:5.)

In support of its argument that the Trust could not demonstrate causation, S & Y relied, as it does here, on federal case law. In its answer to the Trust's claim in arbitration, for example, S & Y quoted a decision of a federal district court, in which that court, in considering a claim for professional malpractice, held "the existence of a simple 'but for' relationship between the claimed negligence and the injury will not support the finding of legal causation." (See Finan Decl. Ex. B at 15-16 (quoting Resolution Trust Corp. v. Strook & Strook & Lavan, 853 F. Supp 1422, 1427 (S.D. Fla. 1994).) Similarly, in its arbitration brief, S & Y quoted an opinion in which the Second Circuit, in considering a federal securities fraud claim, held the plaintiff therein had the burden to prove its loss was "a foreseeable consequence of the misrepresentation." (See id. Ex. D at 11 (citing Suez Equity Investors v. Toronto-Dominion Bank, 250 F.3d 87, 96 (2nd Cir. 2001).)[2]

S & Y, however, fails to demonstrate the panel "intentionally disregarded" the law as set forth in the cited federal authorities. Indeed, there is nothing in those cases or elsewhere in the record suggesting the panel was precluded from accepting as the basis for its decision the evidence submitted by the Trust. See Bosack, 586 F.3d at 1104 (holding party seeking to vacate award must point to "evidence in the record, other than the

---

[2] In the instant action, S & Y identifies a total of ten opinions, six issued by federal courts of appeal (see Compl. ¶¶ 48, 51) and four by federal district courts (see Compl. ¶¶ 49-51), that it brought to the panel's attention during the course of the arbitration to support the general proposition that the Trust was required to demonstrate "a causal connection between [S & Y's] alleged wrongdoing and the damages admittedly caused by Madoff" (see Compl. ¶ 11).

result, that the arbitrators were aware of the law and intentionally disregarded it"). Moreover, a petitioner's burden is "all but impossible" to meet where, as here, the award does not set forth the panel's reasoning. See id. at 1104 (affirming order confirming arbitration award; holding where award is issued "without explanation of [panel's] reasons," it is "all but impossible to determine whether [the panel] acted with manifest disregard for the law"). The instant case does not, for example, involve a situation where, as a factual matter, it was undisputed that S & Y's conduct played no role in the loss, or, as a legal matter, that the Trust's claim was categorically precluded. Cf., e.g., American Postal Workers Union AFL-CIO v. United States Postal Service, 682 F.2d 1280, 1283, 1286 (9th Cir. 1982) (affirming, in case alleging wrongful termination of employment, district court's decision denying motion to confirm arbitration award in which arbitrator had directed reinstatement of postal worker, where it was "undisputed" postal service employee had engaged in strike against postal service and federal statute expressly provided: "[a]n individual may not . . . hold a position in the Government of the United States . . . if he . . . participates in a strike against the Government").

In short, the panel's determination in favor of the Trust does not constitute the panel's "manifest disregard" of the federal authorities cited by respondent, but, rather, its application of that law to the facts, as it found them.

Accordingly, S & Y's Motion to confirm will be denied.

S & Y argues that if the award is not vacated, the Court should order the Trust to "assign" to S & Y any rights it has in the Fund. (See Mot. to Vacate at 25:3-5.) S & Y asserts the Trust, during the course of the arbitration, promised it would assign such rights to S & Y in the event the Trust was awarded, as against S & Y, the "full amount" of its claim. (See id. at 24:1-3.) The parties disagree as to whether the amount awarded constitutes a "full" compensatory award. (Compare id. at 24:7-21 with Opp. to Mot. to Vacate at 23:17-23.) The Court need not address the relative merits of the parties' respective positions on that issue, however, as S & Y fails to cite any authority providing for such relief under the Federal Arbitration Act.

The Court next turns to the Trust's motion to confirm the Award.

Where, as here, an agreement to arbitrate includes a provision for judgment to be entered on the award (see Lapidus Decl. Ex. B), a district court "must" confirm the award "unless the award is vacated, modified or corrected as prescribed in [the Federal Arbitration Act.]." See 9 U.S.C. § 9. As discussed above, S & Y has failed to show the panel, in ruling for the Trust, manifestly disregarded federal law, or that there exists any other basis for the award to be vacated, modified or corrected.

Accordingly, the Trust's motion will be granted.

## CONCLUSION

For the reasons stated above, S & Y's motion to vacate the Award is hereby DENIED, and the Trust's motion to confirm the Award is hereby GRANTED.

The Clerk shall enter judgment on the Award and close the file.

**IT IS SO ORDERED.**

Dated: June 22, 2011

_____
MAXINE M. CHESNEY
United States District Judge